United States District Court
Southern District of Texas

**ENTERED**

May 29, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXIS H.,[1] | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No. 4:23-cv-1147 |
| v. | § | |
| | § | |
| MARTIN O'MALLEY, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM AND ORDER</u>

*Pro se* Plaintiff Alexis H. ("Plaintiff") filed this suit seeking judicial review of

an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C.

§ 405(g). Plaintiff appeals from the decision of the Commissioner of the Social

Security Administration ("Commissioner") denying Plaintiff's claim for disability

insurance benefits under Title II of the Social Security Act ("the Act").[2] The Parties

filed cross-motions for summary judgment. Pl.'s MSJ, ECF No. 12; Def.'s MSJ,

ECF No. 13. Plaintiff seeks an order rendering benefits or remand for further

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On April 7, 2023, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 5.

consideration, arguing that she is unable to work because of her multiple sclerosis and therefore, the ALJ erred in finding she was not disabled. ECF No. 12. Commissioner counters that the ALJ properly found that Plaintiff was not disabled based on proper legal principles and substantial evidence. ECF No. 14. Based on the briefing, the record, and the applicable law, the Court determines that substantial evidence supports the ALJ's determination that Plaintiff was not disabled. Therefore, Plaintiff's motion for summary judgment is denied and Commissioner's motion for summary judgment is granted.

## I.    BACKGROUND

Plaintiff is 30 years old, R. 62, 76, 230[3] and completed three years of college. R. 66. Plaintiff worked as an administrative clerk, assistant, cook, and salesperson. R. 72, 89. Plaintiff alleges a disability onset date of May 25, 2020. R. 63. Plaintiff claims she suffers physical impairments stemming from multiple sclerosis. R. 63, 77.

On September 15, 2020, Plaintiff filed her application for disability insurance benefits under Title II of the Act. R. 230–31. Plaintiff based[4] her application on "off

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 8.

[4] The relevant time period is May 25, 2020—Plaintiff's alleged onset date—through September 30, 2025—Plaintiff's last insured date. R. 20, 63. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

balance, double vision, joint pain in knees, hands are numb, trip/fall frequently."
R. 63, 66, 71, 77. The Commissioner denied his claim initially, R. 62–75, and on
reconsideration, R. 76–91.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney
represented Plaintiff at the hearing. R. 37. Plaintiff, a medical expert, and a
vocational expert ("VE") testified at the hearing. R. 36, 39, 41, 51. The ALJ issued
a decision denying Plaintiff's request for benefits.[5] R. 17–29. The Appeals Council
denied Plaintiff's request for review, upholding the ALJ's decision to deny benefits.

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ determined Plaintiff was not disabled at step five. R. 29. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through her date last insured. R. 20 (citing 20 C.F.R. 404.1571 *et seq*.). At step two, the ALJ found that Plaintiff has the following severe impairment: multiple sclerosis. R. 20 (citing 20 C.F.R. 404.1520 (c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 20–21 (referencing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 404.1567(a) except she can lift and/or carry ten pounds occasionally and five pounds frequently; stand and walk about two hours out an eight-hour workday with normal breaks; and sit for about six hours out of an eight-hour workday with normal breaks; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance as defined by the *Selected Characteristics of Occupations (SCO)* or *Dictionary of Occupational Titles (DOT)*; and occasionally stoop, kneel, crouch and crawl; avoid working around unprotected heights, open flames or dangerous and/or moving machinery; requires a cane at all times, and must avoid rough and uneven surfaces; is right hand dominant and is limited to frequent fingering with the left hand; limited to work with only occasional verbal communication required; must avoid concentrated exposure to extreme heat, cold, humidity and vibrations; and is limited to occasional foot controls, bilaterally. R. 21–26. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. R. 27. At step five, based on the testimony of the VE and a review of the record, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform occupations in the national economy, including document preparer, addresser, cutter and paster. R. 27–29. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 29.

R. 1–6. Plaintiff brought this civil action to challenge the ALJ's decision under 42 U.S.C. § 405(g). ECF No. 1.

## II.    STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of

treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   THE SHIFTING BURDEN OF PROOF.

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant

6

to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.   COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.

In her *pro se* briefing,[6] Plaintiff generally argues that she met all the criteria necessary to qualify for benefits, and she highlights a few factors in support of that contention—namely, that she suffers from and has been diagnosed with severe impairments like multiple sclerosis, ataxia, and memory loss that will last more than twelve months; has provided comprehensive medical records illustrating the severity of her conditions and impact on her ability to work; and had an extensive work history prior to the onset of her disability, but now experiences significant financial hardship due to her inability to work and necessary medical treatment. ECF No. 12. Plaintiff also attaches new evidence to her brief. *Id.* at 3–11.

Plaintiff does not raise any specific arguments related to which of the ALJ's conclusions she takes issue with, but broadly construing her briefing, the Court considers whether the ALJ erred at Step Three, whether the ALJ's RFC

---

[6] "A *pro se* petitioner is entitled to a more liberal construction of his filings, as *pro se* pleadings are held to less stringent standards than those drafted by practicing attorneys." *Gonzalez v. Kijakazi*, No. 7:20-CV-00422, 2022 WL 1547763, at *n.2 (S.D. Tex. Mar. 30, 2022), *adopted*, No. 7:20-CV-00422, 2022 WL 1540432 (S.D. Tex. May 16, 2022) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Pena v. United States*, 122 F.3d 3, 4 (5th Cir. 1997) ("Because [Plaintiff] is pro se, [the Court will] construe his pleadings liberally.")). "However, 'pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.'" *Id.* (quoting *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019)).

determination is supported by substantial evidence, and whether Plaintiff's newly-submitted evidence warrants remand.

Review of the record shows that substantial evidence supports the ALJ's decision that Plaintiff's severe impairment did not meet an impairment listing and Plaintiff has a residual functional capacity ("RFC") that allows her to do "any other work," as defined by the SSA. Therefore, as will be discussed in greater detail, Plaintiff's claims should be dismissed.

**A.    The ALJ did not err finding Plaintiff's impairments did not meet Listing 11.09.**

"At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Gonzalez*, 2022 WL 1547763, at *7 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). "If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement set out in 20 C.F.R. § 404.1509, then the claimant is disabled." *Id.* (citing 20 C.F.R. § 404.1520 (a)(4)(iii), (d)). "If the impairment does not meet a listing, the analysis proceeds to determination of the residual functional capacity." *Id.* (citing 20 C.F.R. § 404.1520 (a)(4)(iv), (e), (f)).[7]

---

[7] "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"

"A claimant's impairment matches a listing when it meets *all* the specified medical criteria." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (citing *Sullivan*, 493 U.S. at 530). "If the claimant's impairment does not match a listing, then the claimant must show that his or her 'unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment' by presenting 'medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Id.* (citing *Sullivan*, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a) (1989))). "[Because] meeting a listing leads to a determination of being disabled without any further examination, the criteria is both 'demanding and stringent.'" *Id.* (quoting *McCullough*, 2019 WL 1431124, at *5 (quoting *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994))). Plaintiff bears the burden at this step. *Current v. Astrue*, No. CIV. A. 08-4963, 2009 WL 3319887, at *8 (E.D. La. Oct. 13, 2009).

In his written decision, the ALJ found Plaintiff's multiple sclerosis[8] was a

---

*Gonzalez*, 2022 WL 1547763, at *7 (citing *Sullivan*, 493 U.S. at 532 (citing 20 C.F.R. § 416.925(a) (1989))). "The reason for this standard is to create a presumption of disability such that, upon a determination of disability at step three, an inquiry into step four would be unnecessary." *Id.* (citing *Sullivan*, 493 U.S. at 532; *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)). "However, '[a]n impairment or combination of impairments that manifests only some of a listing's criteria, no matter how severely, does not qualify; if a claimant's impairment (or combination of impairments) does not satisfy every component, it does not meet the listing.'" *Id.* (quoting *McCullough v. Berryhill*, 2019 WL 1431124, at *5 (W.D. Tex. Mar. 29, 2019) (citing 20 C.F.R. § 404.1525 (c)(3))).

[8] Insofar as Plaintiff claims that her ataxia and memory loss are also severe impairments, the Court

severe impairment. R. 20. Listing 11.09 reads: "Multiple sclerosis, characterized by

A or B:

A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or

B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
   1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
   2. Interacting with others (see 11.00G3b(ii)); or
   3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
   4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.09.[9]

---

notes that she did not include either impairment separately from her multiple sclerosis in her application or mention either impairment at the hearing before the ALJ. R. 63. Therefore, the Court will only consider Plaintiff's multiple sclerosis at Step Three. *See Schultz v. Astrue*, No. CIV.A. 09-3238, 2010 WL 2733605, at *9 (E.D. La. June 8, 2010), *adopted*, No. CIV.A. 09-3238, 2010 WL 2733565 (E.D. La. July 8, 2010) ("Specifically, her disability application does not mention her obesity as a disabling impairment, and plaintiff never once raised her obesity as a disabling impairment at any of the three hearings that the ALJ conducted on her application. Accordingly, plaintiff waived this claim from being raised on appeal.") (citing *Anderson v. Barnhart,* 344 F.3d 809, 845 (8th Cir. 2003) (holding that plaintiff waived claim when he never alleged any limitation in function as a result of his obesity in his disability application or at the administrative hearing)).

[9] The Appendix further reads, "What is multiple sclerosis, and how do we evaluate it under 11.09?

   1. Multiple sclerosis (MS) is a chronic, inflammatory, degenerative disorder that damages the myelin sheath surrounding the nerve fibers in the brain and spinal cord. The damage disrupts the normal transmission of nerve impulses within the brain and between the brain and other parts of the body, causing impairment in muscle coordination, strength, balance, sensation, and vision. There are several forms of MS, ranging from mildly to highly aggressive. Milder forms generally involve acute attacks (exacerbations) with partial or complete recovery from signs and symptoms (remissions). Aggressive forms generally exhibit a steady progression of signs and symptoms with few or no remissions. The effects of all forms vary from person to person.

When the ALJ reviewed Listing 11.09, his review found that Plaintiff's multiple sclerosis did not meet or equal the Listing's requirements. R. 20. Specifically, the ALJ explained that:

> In reaching this conclusion, the undersigned has reviewed the evidence of record, and found that the claimant's impairment, does not meet or equal Listing 11.09. Specifically, the claimant does not have disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities. Further, there is no evidence that the claimant has a marked limitation in physical functioning AND a marked limitation in one of the following areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; or (4) adapting or managing oneself.

R. 20. The ALJ explained that the above was consistent with medical expert Dr. Coralee Amusa's hearing testimony. Dr. Amusa, an internal medicine doctor, testified that although the record showed a diagnosis of multiple sclerosis with some weakness of the lower extremities resulting in issue with balance and the need for an assistive device, the record did not show an extreme limitation as required under

---

2. We evaluate your signs and symptoms, such as flaccidity, spasticity, spasms, incoordination, imbalance, tremor, physical fatigue, muscle weakness, dizziness, tingling, and numbness when we determine your ability to stand up, balance, walk, or perform fine and gross motor movements. When determining whether you have limitations of physical and mental functioning, we will consider your other impairments or signs and symptoms that develop secondary to the disorder, such as fatigue; visual loss; trouble sleeping; impaired attention, concentration, memory, or judgment; mood swings; and depression. If you have a vision impairment resulting from your MS, we may evaluate that impairment under the special senses body system, 2.00.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Paragraph A of Listing 11.09. R. 20–21, 42–43. The ALJ found that Dr. Amusa and both State Agency medical consultants concluded that Plaintiff did not have an impairment that met a Listing level of severity. R. 21. Indeed, both State Agency medical consultants found that upon review of Plaintiff's medical record, her multiple sclerosis did not meet the Listing. R. 67–69, 71, 82–83, 88.

The ALJ also detailed Plaintiff's medical records related to her multiple sclerosis, noting that after being prescribed Copaxone in 2017, Plaintiff experienced intermittent limb weakness and sensitivity to heat, but denied any relapses, worsening of symptoms, or side effects, and showed no deficits of sensation, motor strength, reflexes, gait and station. R. 22. The ALJ observed that, although Plaintiff testified to ongoing and disabling symptoms, the record did not include any evidence of treatment from October 2017 until August 2021, and Plaintiff admitted to stopping her medication. R. 23. The ALJ noted that in August 2021, Plaintiff sought treatment for limb weakness and spasticity, numbness, tingling, imbalance, visual and urinary disturbance, fatigue, and cognition. However, after Plaintiff restarted her medication and in November 2021, she reported improvement in her balance, limb weakness, numbness, tingling, urinary disturbance, visual disturbance, and fatigue. R. 24. The ALJ advised that no further treatment is contained in the record. R. 24.

Here, the record does not contain substantial evidence of significant and persistent disorganization of Plaintiff's motor function as described in § 11.04A,

mental impairment of the severity described in § 12.02, or significant and reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process, as required by Listing 11.09B. *See Current*, 2009 WL 3319887, at *10. The ALJ did not err at Step Three.

**B.    Substantial evidence supports the ALJ's determination of Plaintiff's RFC.**

"Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's residual functional capacity (RFC)." *Gonzalez*, 2022 WL 1547763, at *9–11 (citing 20 C.F.R. § 404.1520(e)). "In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe." *Id.* (citing 20 C.F.R. §§ 404.1520(e), 404.1545; SSR 96-8p, 1996 WL 374184 (July 2, 1996)).

"An individual's residual functional capacity is 'the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.'" *Id.* (quoting *Irby v. Barnhart*, 180 F. App'x. 491, 493 (5th Cir. 2006) (citing SSR 96–8p, 1996 WL 374184 (July 2, 1996))). "When determining the RFC, an ALJ considers descriptions provided by physicians and the claimant, alongside the claimant's

overall credibility." *Id.* (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988)). "If an ALJ's decision expressly states that it was made '[a]fter careful consideration of all the evidence,' and there is no reason or evidence to dispute his assertion, then the Fifth Circuit will not disturb the ALJ's conclusions." *Id.* (quoting *Brunson v. Astrue*, 387 F. App'x. 459, 461 (5th Cir. 2010)).

"In addition, any conflicts between the claimant's testimony and the medical records are for the Commissioner to resolve." *Id.* (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983))). "Even if the court determines the evidence 'preponderates in [the claimant's] favor,' a court must still affirm the Commissioner's findings if there is substantial evidence to support these findings." *Id.* (quoting *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton*, 697 F.2d at 592; *Olson v. Schweiker*, 663 F.2d 593, 595 (5th Cir. 1981))).

In his decision, the ALJ determined Plaintiff's RFC as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift and/or carry ten pounds occasionally and five pounds frequently; stand and walk about two hours out an eight-hour workday with normal breaks; and sit for about six hours out of an eight-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance as defined by the *Selected Characteristics of Occupations (SCO)* or *Dictionary of Occupational Titles (DOT)*; and occasionally stoop, kneel, crouch and crawl. The claimant is to avoid working around unprotected heights, open flames or dangerous and/or moving machinery. She requires a

cane at all times, and must avoid rough and uneven surfaces. The claimant is right hand dominant and is limited to frequent fingering with the left hand. The claimant is limited to work with only occasional verbal communication required. She must avoid concentrated exposure to extreme heat, cold, humidity and vibrations; and is limited to occasional foot controls, bilaterally.

R. 21. The record's testimonial and medical evidence is consistent with the ALJ's determination.

The ALJ first discussed Plaintiff's testimony and application allegations, noting that Plaintiff complained that she could not work because she had issues with her balance, double vision, knee pain, numb hands, and frequent falls, for which she required the use of a cane or walking stick. R. 22. The ALJ also noted that Plaintiff testified that her medication did not improve her multiple sclerosis, but she was in the "remitting phase of her impairment, and her last 'flare' occurred before she stopped working in May 2020." R. 22. The ALJ observed that, in March 2021, Plaintiff acknowledged that she cared for her personal needs without difficulty, daily prepared meals without help, performed household chores, drove, traveled alone, shopped in stores and online, was capable of walking two blocks without resting, and could lift ten to fifteen pounds. R. 24. The ALJ also recognized that, in June 2021, Plaintiff reported more difficulty with her daily activities—to account for this, the ALJ limited Plaintiff to no more than sedentary work. R. 24–25.

The ALJ then discussed the medical record and highlighted, with sufficient citations to the medical record, that Plaintiff was diagnosed with relapsing, remitting

multiple sclerosis in September 2016," and in an October 2016 MRI learned her brain had multiple bilateral deep white matter sclerosis plaques and a five-millimeter lesion within the spinal cord. R. 22.[10] After starting medication, she only complained of intermittent gastrointestinal symptoms. R. 22.[11] Notably, the ALJ states that despite Plaintiff's allegations, "the record contains no evidence of treatment during the period from October 2017 to August 2021." R. 23. In August 2021, Plaintiff sought treatment for various symptoms of her multiple sclerosis, including weakness, numbness, and fatigue—Plaintiff underwent an examination and MRI, which showed the same results from the 2016 MRI with no suggestion of "active demyelination,"[12] "any significant central or cortical atrophy,[13] acute cortical

---

[10] Citing R. 343 (UT Physicians medical notes indicating MS assessment from May 1, 2017); 348 (Memorial Hermann medical result showing MS diagnosis, dated October 28, 2016); 350 (Memorial Hermann medical result showing MS diagnosis, dated October 28, 2016); 365-71 (medical records from Memorial Hermann, dated October 28, 2016), 451 (hospital records from Kingwood Medical Center, dated September 20, 2016); 490-514 (medical records from Emergency Room visit, dated August 31, 2016); 531 (office treatment records from UT Physicians, dated October 28, 2016).

[11] Citing R. 490-514 (medical records from Frontline ER Richmond visit, dated August 31, 2016).

[12] "A demyelinating disease is any condition that causes damage to the protective covering (myelin sheath) that surrounds nerve fibers in your brain, the nerves leading to the eyes (optic nerves) and spinal cord. When the myelin sheath is damaged, nerve impulses slow or even stop, causing neurological problems." *See* https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/expert-answers/demyelinating-disease/faq-20058521#:~:text=A%20demyelinating %20 disease%20is%20any,even% 20 stop%2C%20causing%20neurological%20problems. (last visited March 22, 2024).

[13] Posterior cortical atrophy is a brain and nervous system syndrome that causes brain cells to die over time. It causes problems with eyesight and with processing visual information." *See* https://www.mayoclinic.org/diseases-conditions/posterior-cortical-atrophy/symptoms-causes /syc -20376560#:~:text=Posterior%20cortical%20atrophy%20is%20a,distances%20and%20 reaching %20for%20objects. (last visited March 22, 2024).

infarct,[14] parenchymal hemorrhage[15] or intra-axial mass.[16]" R. 22–23.[17] After restarting her medication, Plaintiff only had one more medical record, a tele-doc visit in November 2021, when she reported no falls and "that her symptoms of numbness, ting[l]ing, urinary disturbance, visual disturbance and fatigue were stable." R. 24.[18] The ALJ concluded that the record showed that Plaintiff's impairments could reasonably cause her symptoms, but not to the extent she complains because the record showed that Plaintiff did not seek treatment from November 2017 until August 2021, despite Plaintiff's complaint that she was disabled since May 2020, did not seek any emergency treatment or hospitalization, and experienced improvement and stabilization of symptoms when on medication. R. 24.

---

[14] "Also called ischemic stroke, a cerebral infarction occurs as a result of disrupted blood flow to the brain due to problems with the blood vessels that supply it. A lack of adequate blood supply to brain cells deprives them of oxygen and vital nutrients which can cause parts of the brain to die off." *See* https://www.news-medical.net/health/Cerebral-Infarction.aspx#:~ :text=Also%20 called%20ischemic%20stroke%2C %20a,the%20brain%20to%20die%20off. (last visited March 22, 2024).

[15] "Intraparenchymal hemorrhage is bleeding into the brain. . . . " *See* https://www.ncbi.nlm.nih.gov/books/NBK470242/#:~:text=Intraparenchymal%20hemorrhage%2 0is%20 bleeding%20into,infection%2C%20vasculitis%2C%20and%20trauma. (last visited March 22, 2024).

[16] "Brain tumors that are rooted in the brain Parenchyma are referred to as intra-axial. If the origin of the tumor is outside of the brain (or it is due to metastasis), it is called extra-axial." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5053452/#:~:text=Brain%20tumors%20that%20 are%20rooted,axial%20(4%2C%205). (last visited March 22, 2024).

[17] Citing R. 523-75 (office treatment records from UT Health Neuroscience, dated October 12, 2016 to November 2, 2021).

[18] Citing R. 570 (office treatment records from UT Health Neuroscience, dated November 2, 2021); 581 (office treatment records from UT Physicians Health Information Management, dated November 2, 2021).

The ALJ also considered the record's medical opinions. The ALJ discussed consultative neurological examiner Dr. Croft, who opined that Plaintiff's history and physical examination were consistent with her manifestations of weakness, fatigue, and ataxia, and that Plaintiff's symptoms would worsen over time. R. 25.[19] The ALJ found this opinion to be partially persuasive as consistent with treatment records, but noted that Dr. Croft did not opine on Plaintiff's work-related abilities. R. 25. The ALJ next summarized Dr. Amusa's testimony, noting that Dr. Amusa summarized the medical record related to Plaintiff's multiple sclerosis and offered opinions on Plaintiff's work-related abilities, which the ALJ adopted in his RFC determination. R. 25–26. The ALJ found Dr. Amusa's opinion to be persuasive because "she had the benefit of the developed record in issuing her opinion," and provided a detailed summary of the record and supported her opinions well. R. 26. Finally, the ALJ addressed the opinions of the State Agency consultants, Dr. Bonnie Lammers and Dr. James Upchurch, both of which were not as restrictive as the ALJ's RFC determination. R. 26.[20] The ALJ found that both opinions were partially persuasive "as they were based on evidence available at the time of the doctors' reviews," but ultimately relied on Dr. Amusa's opinion, based on a review of the fully developed record, that Plaintiff was more limited than the State Agency medical experts'

---

[19] Citing R. 519 (Consultative examination report, Dr. Steven Croft, dated March 31, 2021).

[20] Citing R. 62-74 (Disability Determination Exam, Dr. Lammers, dated April 23, 2021); 76-91 (Disability Determination Examination, Dr. Upchurch, dated June 29, 2021).

opinions. R. 26.

Based on the entire record, including the medical opinions, the ALJ found the Plaintiff has the RFC to perform sedentary work with the described limitations, which he found was supported by the longitudinal record, the Plaintiff's reports regarding her activities, and the medical expert's testimony. The ALJ acknowledged that Plaintiff's multiple sclerosis is severe but found it does not preclude her from performing a reduced range of sedentary work. R. 26.

Again, Plaintiff did not articulate why the ALJ's RFC assessment was erroneous. ECF No. 12. While her testimony at the hearing described greater symptoms from her multiple sclerosis, it was contrary to her most recent report to her treating physician that her symptoms had stabilized. The ALJ, as the trier of fact, determines the credibility of the witnesses, not the court on appeal. *Gonzalez*, 2022 WL 1547763, at *9–11. Based on an independent review of the entire record, the Court finds that the ALJ's RFC determination is supported by substantial evidence. *See id.* at *11 ("Plaintiff did not articulate an argument as to why the ALJ's RFC determination was erroneous and solely asked that the SSA find him disabled. . . . there is no reason or evidence to dispute the ALJ's assertions. And, since there is substantial evidence in the record to support the ALJ's finding that Plaintiff can perform light work—namely, the fact that although Plaintiff does have a back injury,

said injury does not prevent him from doing light work—the undersigned affirms the ALJ's RFC determination.").

## C.    Plaintiff Failed to Establish Good Cause to Remand Based on New Evidence.

Attached to her briefing, Plaintiff provided: (1) a multiple sclerosis medical source statement questionnaire from Elizabeth Kaluanga, NP-C, dated October 31, 2022; and (2) medical records from Dr. Edcheril V. Benny, dated October 26, 2023. ECF No. 12 at 3–11.  The Court may remand the case for further proceedings if there is additional evidence that is new and material, and good cause exists for the failure to present the evidence at the administrative level. *Venglar v. Saul*, No. 6:20-CV-00020, 2020 WL 6586329, at *9 (S.D. Tex. Oct. 29, 2020), *adopted*, No. 6:20-CV-20, 2020 WL 6582359 (S.D. Tex. Nov. 10, 2020), *aff'd sub nom. Venglar v. Kijakazi*, 853 F. App'x 984 (5th Cir. 2021) (citing 42 U.S.C. § 405(g)).

Here, Plaintiff has not shown good cause for her failure to submit this or similar evidence into the record at the administrative level. Plaintiff did not provide any explanation, much less good cause, as to why she was unable to obtain and submit these documents either before the ALJ's decision on July 14, 2022, or before the Appeals Council denied review on November 29, 2022. In fact, Nurse Practitioner Kaluanga's questionnaire from October 31, 2022 reveals she had six years of contact with Plaintiff. ECF No. 12 at 3–8. Plaintiff could have obtained the questionnaire and records prior to the Appeals Council decision, at the latest.

Therefore, Plaintiff failed to carry her burden of providing good cause for the absence of this evidence and may not use the evidence as the basis for a remand. *See Current*, 2009 WL 3319887, at *6–7.

## V.     CONCLUSION

It is therefore **ORDERED** that Plaintiff's motion for summary judgment, ECF Nos. 12, is **DENIED**. It is further **ORDERED** that Commissioner's motion for summary judgment, ECF No. 13, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. This case is **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on May 29, 2024.

**Dena Hanovice Palermo**
**United States Magistrate Judge**